# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

DEBRA LYNN POWELL,          )
     Plaintiff,              )
                          )
     v.                     )       CAUSE NO.: 1:18-CV-410-JPK
                          )
ANDREW M. SAUL,          )
Commissioner of Social       )
Security Administration,     )
     Defendant.            )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Debra Lynn Powell on December 10, 2018, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of the Social Security Administration [DE 16], filed on June 12, 2019. Plaintiff requests that the April 10, 2018 decision of the Administrative Law Judge (ALJ) denying her claim for disability insurance benefits be reversed and remanded for further proceedings. The Commissioner filed a Memorandum in Support of Commissioner's Decision, and Plaintiff filed a Reply Brief. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed the application for disability insurance benefits at issue in the instant appeal on March 2, 2016. (AR 24, 160).[1] The application alleged disability beginning on December 29, 2015, due to back injury, moderate osteoarthritis in vertebrae/spine, chronic pain syndrome, degenerative disc disease, levoscoliosis of spine, and other impairments. (AR 24, 150-60). Plaintiff had alleged some of the same impairments in a prior application that was denied initially, upon

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

reconsideration, and after an ALJ's hearing decision effective December 28, 2015, the day before

the onset date alleged in Plaintiff's March 2016 application. (AR 130-44, 151, 162, 319). Plaintiff's

March 2016 application was also denied initially and on reconsideration (AR 150-173), after which

a hearing was held before a different ALJ on September 18, 2017. (AR 42). On April 10, 2018,

this second ALJ issued an unfavorable decision, making the following findings:[2]

1.      The claimant last met the insured status requirements of the Social Security
Act on September 30, 2016.

2.      The claimant did not engage in substantial gainful activity during the period
from her alleged onset date of December 29, 2015 through her date last insured of
September 30, 2016.

3.      Through the date last insured, the claimant had the following severe
impairments: osteoarthritis of the left knee status post arthroscopy, microfracture
of lateral femoral condyle, chondroplasty of patellofemoral joint, chondroplasty of
medial femoral condyle, and arthroscopic lateral release. Additionally, the claimant
has the severe impairments of status post right knee arthroscopy; status post L2-3
decompression and interbody fusion; degenerative disc disease of lumbar spine;
degenerative disc disease of the thoracic spine; levoscoliosis and radiculopathy of
the lumbar spine; and obesity.

4.      Through the date last insured, the claimant did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      [T]hrough the date last insured, the claimant had the residual functional
capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the
claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb
ramps and stairs. She can occasionally balance, stoop, kneel, and crouch. She can
never crawl. She must avoid concentrated exposure to extreme heat and cold,
wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and
hazards such as machinery with unprotected, moving mechanical parts, unprotected
heights, and slick, wet, and uneven surfaces. She needs a sit/stand option after 30
minutes while staying on task at the workstation.

6.      Through the date last insured, the claimant was unable to perform any past
relevant work.

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal
Regulations are omitted.

7.      The claimant was born [in] 1967 and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from December 29, 2015, the alleged onset date, through September 30, 2016, the date last insured.

(AR 26-36).

The Appeals Council denied Plaintiff's request for review on October 22, 2018 (AR 1-7), leaving the ALJ's April 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g). The parties thereafter filed forms consenting to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court therefore has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the

Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity

since the alleged onset of disability; (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations; (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work; and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff raises four challenges to the ALJ's April 2018 decision. She argues: (1) the sit/stand and on-task limitations in the ALJ's RFC determination were not supported by substantial evidence; (2) the ALJ improperly discounted the opinion of Plaintiff's physical therapist without considering the regulatory factors set forth in 20 C.F.R. § 404.1527(c) and SSR 06-3p; (3) the ALJ improperly assessed the medical evidence concerning Plaintiff's knee and back impairments; and (4) the ALJ's evaluation of Plaintiff's subjective limitations improperly relied on her daily activities and treatment history, failed to consider the side effects of her medications, and applied an incorrect legal standard. The Court addresses each argument in turn.

# I.     The RFC Determination

Plaintiff first challenges the ALJ's RFC determination in two respects, both concerning the ALJ's inclusion of a "sit/stand option" in her RFC. Specifically, the ALJ determined that Plaintiff can tolerate "a sit/stand option after 30 minutes while staying on task at the work station." (AR 29). Plaintiff argues first the determination she can sit or stand for 30 minutes at a time is unsupported and unexplained. (Pl.'s Br. 7, ECF No. 16). And second, Plaintiff maintains the ALJ's conclusion she can stay on task at her work station while adhering to such a sit/stand option was not based on her physical ability, but instead included only because the Vocational Expert (VE) testified that "it was necessary to reconcile the sit/stand option with the jobs at issue." (*Id*. at 10). The Court agrees that both issues require remand.

## A.     The Sit/Stand Option

As Plaintiff explains, the ALJ based the RFC's inclusion of "a sit/stand option after every 30 minutes" on two pieces of evidence. (AR 29, 32-33; Pl.'s Br. 8-9, ECF No. 16). The decision stated: "the claimant was able to walk for 15 minutes at one time less than 2 months after her left knee surgery," and "testified to activities of daily living including grocery shopping and household chores. Therefore, the undersigned finds that the claimant could stand or walk for 30 minutes at one time, but would need a sit/stand option." (AR 32 (citing AR 758)). But the ALJ failed to explain how this evidence suggested Plaintiff's ability to stand or sit for 30 minutes at a time. To the contrary, as Plaintiff also explains, the April 2016 therapy record on which the ALJ relied documents Plaintiff's ability to walk for only 15 minutes and with the aid of a "glider" (*i.e.*, walker) "as long as she does not twist her knee." (AR 758).[3] It also noted Plaintiff's "difficulty descending

---

[3] The Commissioner stresses that Plaintiff must demonstrate a disability within a nine-month period, from December 29, 2015 to September 30, 2016, and suggests this is "the weakest link" in Plaintiff's case. (D's Mem. 7, ECF. 22). Yet this therapy record is one of many records speaking to Plaintiff's status during that time frame.

stairs," and increased pain (up to 5 on a scale of 1 to 10) with exercises. (AR 758). The hearing testimony on which the ALJ relied also raises concerns about Plaintiff's ability to stand for 30 minutes, since Plaintiff explained that she manages chores such as doing dishes only by leaning against the sink for support, and that she does laundry with the help of her grandchildren while she gives them directions. (AR 53-54).

Other evidence corroborates Plaintiff's claimed difficulty sitting and standing due to knee and back pain. For instance, the report from Plaintiff's April 2016 consultative psychological examination noted that she walked with a limp, reported using a cane or walking stick to steady herself, and "was up and down continuously throughout the examination due to being uncomfortable and in pain." (AR 665). An April 2016 Function Report also noted Plaintiff's use of a cane in 2016 (AR 343), and she testified at the September 2017 hearing that she had been using a walking stick for two years. (AR 55). As importantly, five months after the April 2016 therapy record cited by the ALJ (noting Plaintiff's ability to walk for 15 minutes with a glider within two months of her knee surgery), a September 2016 treatment record documented Plaintiff's knee swelling and constant knee pain (of 8 on a scale of 1 to 10) worsened by activity, including bending, standing, and straightening the knee. (AR 880). And other treatment records throughout 2016 document spinal injections and medications needed to address Plaintiff's ongoing back pain since her spinal fusion surgery in 2012 (AR 543, 550-53, 600, 605-09, 670-73, 683-86), which Plaintiff says similarly impedes her abilities to sit and stand. (Pl.'s Br. 8, ECF No. 16).

Although the ALJ generally acknowledged Plaintiff's ongoing knee and back pain and use of a walking stick (AR 30-33), neither the ALJ's decision nor the Commissioner's brief addresses any of the evidence discussed above in relation to the thirty-minute sit/stand option included in Plaintiff's RFC. (AR 30-33; D's Mem 10, ECF No. 22). Instead, the Commissioner points to the

hearing decision on Plaintiff's prior application finding her not disabled as of December 28, 2015, which similarly included a "sit/stand option after thirty minutes" in its RFC. (D's Mem. 7, ECF No. 22 (citing AR 136)). According to the Commissioner, Plaintiff must now "demonstrate that her condition significantly worsened over the next 9 months" in order to establish disability by her September 2016 date last insured. (*Id.*). But the Social Security Administration requires de novo review of a disability claim involving a period not previously adjudicated. *Charles K. v. Berryhill*, No. 1:18-cv-2013, 2019 WL 667760, at *3 (S.D. Ind. Feb. 15, 2019) (citing Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act, AR 98-4(6), 1998 WL 283902, at *2 (June 1, 1998)). The Seventh Circuit has also rejected the notion that an ALJ must "use the same RFC that a different ALJ used in denying the benefits for an earlier period." *Id.* (citing *Penrod v. Berryhill*, 900 F.3d 474, 477 (7th Cir. 2019)).

Thus, contrary to the Commissioner's argument that Plaintiff must demonstrate significant worsening of her condition compared to the previously adjudicated period, the ALJ presiding over Plaintiff's current disability claim was required to consider that claim de novo based on the evidence pertaining to the period under review, and then determine an RFC based on that evidence, and draw an accurate and logical bridge from the evidence to her determination. But the ALJ discussed only two pieces of evidence in support of the sit/stand option included in Plaintiff's RFC (the ability to walk for fifteen minutes and limited daily activities), and then overlooked contrary indications in that evidence (use of an assistive device when walking, leaning on a sink when standing, and family help with activities), and further failed to explain how any aspect of that limited evidence supported the conclusion that Plaintiff could sit or stand for as long as thirty minutes at a time, as the sit/stand option would require. (AR 32, 53-54, 758). Equally problematic,

the ALJ also failed to address considerable additional evidence that similarly contradicted the conclusion that Plaintiff could sit or stand for thirty-minutes intervals, including her consistent use of a walking stick or cane (AR 55, 343, 665), continual changing of positions during her April 2016 consultative examination "due to being uncomfortable and in pain" (AR 665), and treatment records documenting her ongoing back and knee pain worsened by activity, such as standing. (AR 543, 550-53, 600, 605-09, 670-73, 683-86, 880).[4]

Accordingly, the Court concludes that the case must be remanded for further consideration of the thirty-minute sit/stand option included in Plaintiff's RFC in light of the foregoing evidence, and a clearer explanation of how that evidence either supports such an option or warrants a different one. *See Diaz v. Berryhill*, 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (remanding for reconsideration of sit/stand option where ALJ failed to explain "what she relied on or how she arrived at the calculation for the sit-stand option") (citing *Williams v. Berryhill*, No. 16 C 3807, 2017 WL 3130763, at *8 (N.D. Ill. July 24, 2017) (remanding where "the ALJ did not explain what support she relied on or how she arrived at the calculations for the sit-stand option" or "what medical evidence led the ALJ to conclude that a break from sitting would be necessary after 30 minutes (as opposed to earlier or later), or why a 1-2 minute break (rather than a longer one) would be adequate," and the Commissioner identified no "specific evidence that would support such a conclusion either")). But this is not to say that a disability finding, or even a different RFC, is required on remand. The Court concludes only that the ALJ failed to explain how the evidence supported the thirty-minute sit/stand option included in

---

[4] Plaintiff also contends the ALJ failed to consider the impact of her obesity on her knee and back impairments when determining her ability to exercise a sit/stand option. (Pl.'s Br. 8, ECF No. 16). Although the Commissioner does not address this argument, the Court notes the ALJ's repeated consideration of Plaintiff's obesity and its impact on her impairments (AR 27, 29, 31), though not specifically in connection with the sit/stand option. (AR 32). Thus, when reassessing the sit/stand option in light of the evidence discussed above, the ALJ is reminded of the need to consider the impact of Plaintiff's obesity on her knee and back impairments, as well as any evidence indicating her difficulty rising from standing. (*E.g.*, AR 784, 801).

Plaintiff's RFC, and further failed to address several pieces of evidence bearing on that determination. "Because the ALJ did not explain the basis for the limitation, the Court cannot trace the path of her reasoning." *See Hurley v. Colvin*, No. 2-12-CV-103, 2014 WL 939441, at *15 (N.D. Ind. Mar. 10, 2014) (remanding where ALJ provided "no explanation as to why [claimant] only required a standing option of 5 to 10 minutes, as opposed to 15, 20, or 30 minutes or even a sit/stand at-will option" and no "treating, examining, or reviewing physicians indicated what amount of time would fully accommodate [claimant's] pain"). But still, whether the full record requires the same or a different sit/stand option remains for the ALJ to determine and explain. "On remand, should the ALJ impose the same RFC, she shall explain the evidentiary basis for this exertional limitation." *See id*.

**B.      The On-Task Limitation**

In addition to its requirement to sit or stand for thirty minutes at a time, Plaintiff further challenges the sit/stand option insofar as it requires her to stay "on task at the work station" while exercising this option. (AR 29). Plaintiff argues this requirement "is not a reflection of the most she can do despite her impairments, which is the purpose of the RFC," but rather, one imposed by the ALJ "only after the VE told her it was necessary to reconcile the sit/stand option with the jobs at issue." (Pl.'s Br. 10, ECF No. 16). On the other hand, "the Commissioner disagrees with Plaintiff that it was improper for the ALJ to include in her RFC finding the ability to stay on task when exercising her sit/stand option," as "the ability to stay on task while exercising a sit/stand option" may be an assessment of the most a claimant can do despite her limitations. (D's Mem. 10, ECF No. 22). But the Commissioner points to no analysis by the ALJ explaining whether this on-task limitation was in fact an assessment of Plaintiff's ability or merely a requirement noted by the VE. And in fact, the September 2017 hearing transcript shows the ALJ included no such requirement

in the hypotheticals posed to the VE, but rather the VE noted the need for a worker exercising a sit/stand option to remain on task while doing so. (AR 68-69). Only then did the ALJ inquire about the allowable off-task percentage for the jobs identified, which the VE stated would be about 10% of the workday, exclusive of regular breaks. (AR 69-70). The ALJ's decision then included the on-task limitation in Plaintiff's RFC. (AR 29).

The record thus fails to indicate whether the ALJ included the on-task requirement in Plaintiff's RFC because he concluded Plaintiff could manage it while exercising the sit/stand option, or merely because the jobs identified by the VE required it. *See Diaz*, 2018 WL 4627218, at *8 (where RFC required remaining on-task while exercising sit/stand option, ALJ's question to VE concerning off-task time indicated she "considered that issue in her decision . . . but then she failed to provide any analysis of whether, for example, the claimant was limited by any off-task allowances and, if so, for how long"). As the case is being remanded on other grounds, that error alone must be corrected on remand. *Id.*; *see also Ghiselli v. Colvin*, 837 F.3d 771, 779 (7th Cir. 2016) (requiring clearer explanation of on-task requirement in sit/stand option in case remanded on other grounds: "on remand the agency should take care to ensure that it builds a logical bridge from the medical evidence to its conclusions . . . regarding this (and any other) limitation attendant to its residual functional capacity determinations"); *Green v. Saul*, No. 19-cv-528, 2020 WL 1150447, at *5 (E.D. Wis. Mar. 3, 2020) ("The ALJ did not explain why the evidence supported a finding that Green would not be off task when transitioning to sitting or standing. Therefore, on remand the ALJ must either explain why she found Green would not be off task while transitioning to sitting or standing or omit such a caveat from the hypothetical she presents to the vocational expert."). But also, while the failure to explain such an on-task requirement may be harmless in some circumstances, *see Ghiselli*, 837 F.3d at 779, this case may require more than mere

clarification of the basis for the on-task requirement, particularly in the event the ALJ revises Plaintiff's sit/stand option on remand.

As noted above, the report from Plaintiff's April 2016 psychological consultative examination notes that she "was up and down continuously throughout the examination due to being uncomfortable and in pain." (AR 665). Treatment records in 2016 also show that she has moderate difficulty rising from sitting (AR 784, 801), possibly indicating that Plaintiff's ability to remain on-task while doing so may be at least minimally affected while she changes positions twice an hour throughout the workday, as the current sit/stand option provides. And that possibility may increase if the ALJ determines that a shorter sitting and/or standing requirement is needed. In fact, the VE who testified during the hearing on Plaintiff's prior claim opined that more frequent changing of positions (standing for five minutes after fifteen minutes of sitting, sitting for fifteen minutes after five minutes of standing, and sitting for ten minutes after fifteen minutes of walking) "would interrupt persistence and pace to complete the job in a competitive manner" so as to preclude such a person "from all work." (AR 127). Thus, as the record here indicates Plaintiff's need to change positions "continuously" and her moderate difficulty doing so, it will be necessary on remand to determine first the appropriate time periods for any sit/stand option (*i.e.*, shorter, longer, or at will), and then to determine the impact of that option on Plaintiff's pace and productivity. But again, none of this is to say that any particular or different result is required, only that the ALJ must provide sufficient bases and explanations for both conclusions.

## II.     The Opinion of Plaintiff's Physical Therapist

Closely related to Plaintiff's challenge of the sit/stand option is her argument that the ALJ improperly assessed the Functional Capacity Evaluation of her Physical Therapist (PT), Nathan Notter. On July 6, 2015, PT Notter completed a nine-page evaluation reporting the results of

numerous range-of-motion, repetitive-movement, and strength tests. (AR 629-37). According to this report, Plaintiff had reduced lumbar active range of motion, reduced range of motion in bending, and was unable to complete certain bending, reaching, and squatting tests due to increased pain, particularly in the lower back, right hip, and right lower extremity. (AR 631-36). PT Notter further noted that Plaintiff "gave a good effort throughout the functional capacity evaluation but did complain of increased pain present in the low back and right lower extremity while performing all portions" of it, was unable to perform several repetitive movement tests due to such pain, and demonstrated "low percentile ranked scores for all portions of the static strength testing." (AR 632-36). Based on these results, PT Notter recommended the following exertional limitations: lifting and carrying no more than 10 pounds; pushing or pulling no more than 25 pounds; no squatting or floor to waist lifting; and sitting, standing, walking, stair-climbing, bending, and reaching only "rarely," meaning "0-5% of the time." (AR 636-37).

The ALJ accorded "some weight" to these opinions, but acknowledged only two of them. (AR 33). Specifically, the decision accorded "partial weight" to PT Notter's Evaluation "to the extent that it shows the claimant could lift or carry 10 pounds occasionally and less than 10 pounds frequently," finding this opinion "generally consistent with the record as a whole." (AR 33). But the decision gave "little weight" to PT Notter's other opinions because (in the ALJ's view) "there is little evidence showing that the claimant can rarely sit," and the sit/stand option included in Plaintiff's RFC would address "any discomfort in sitting or standing." (AR 33). Plaintiff challenges this assessment in two respects. She argues first that the ALJ failed "to evaluate PT Notter's opinion using the relevant factors set forth at 20 C.F.R. § 404.1527(c) and SSR 06-3p," such as the supportability of the opinions, their consistency with the record, the nature and length of the examining and/or treatment relationship, and any specialization of the opinion's

source. (Pl.'s Br. 21, ECF No. 16). Second, Plaintiff contends the ALJ improperly failed to address PT Notter's opinions on functions other than lifting and sitting, such as his recommendations of standing, walking, and reaching only 5% of the workday. (Pl.'s Br. 22, ECF No. 16). These restrictions are potentially dispositive, Plaintiff argues, because the RFC adopted by the ALJ requires standing and walking far more than 5% of the day, and the jobs identified by the VE required frequent reaching. (*Id.*).

The Commissioner addresses these arguments in one sentence: "The Commissioner responds that the ALJ properly explained the weight given to each of the medical opinions as well as that of Mr. Notter." (D's Mem. 10, ECF No. 22 (citing AR 32-33)). Noting its brevity, Plaintiff "respectfully suggests that conclusory statement is virtually nonresponsive," and therefore "waived a challenge to this error." (Pl.'s Br. 6, ECF No. 23 (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Nagy v. Berryhill*, No. 2:18-CV-26, 2019 WL 2265368, at *3 (N.D. Ind. May 28, 2019) (citing *Bonte* in finding Commissioner conceded error by failing to respond to claimant's argument)). Regardless of any waiver, however, the ALJ's assessment of PT Notter's opinions requires remand. "Even though a physical therapist is not an acceptable medical source for determining a claimant's impairments, this evidence may be used to show the severity of an impairment and how it affects a claimant's ability to function." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). And the regulations applicable to Plaintiff's claim provided for consideration of such opinions in light of the factors articulated in Section 404.1527, and made clear that, "[d]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating

source." 20 C.F.R. § 404.1527(f)(1); SSR 06-03p, 2006 WL 2329939, at *5.[5] Yet the ALJ failed to conduct such an assessment of PT Notter's opinions, and further failed to acknowledge several of his opinions (that Plaintiff can sit, stand, and reach only rarely) which may have precluded all work. (AR 637).[6]

Equally problematic, the ALJ's stated reasons for discounting PT Notter's opinions also raises questions. While the ALJ saw "little evidence showing that the claimant can rarely sit" (AR 33), the record shows before, during, and after the period covered by Plaintiff's current application she has had difficulty sitting due to back pain, to the point where she "was up and down continuously" due to pain, or sitting was "intolerable." (AR 107, 665, 1164, 1185). At the very least, PT Notter's opinion that Plaintiff can sit only rarely is consistent with this evidence. (AR 636-37). The regulatory factors in § 404.1527(c) and SSR 06-03p required the ALJ to address that consistency, identify any contrary evidence, and consider the extensive testing on which PT Notter's opinions were based and his area of specialty, among other factors. Moreover, as explained above, while the ALJ may have believed the thirty-minute sit/stand option included in Plaintiff's RFC addressed her difficulty sitting, that option must be revisited in light of the foregoing evidence as well. Accordingly, the case is remanded for reconsideration of each of PT Notter's opinions in light of the full record and the required regulatory factors, and a clearer explanation of why and how those opinions are consistent or

[5] As Plaintiff notes, SSR 06-3p has been rescinded for claims filed after March 27, 2017, but was applicable to Plaintiff's March 2016 application. (Pl.'s Br. 21, ECF No. 16). The same is true of Section 404.1527. *See* 20 C.F.R. 404.1520c.

[6] *See also Joseph H. v. Saul*, No. 17 C 50353, 2019 WL 5963631, at *10 (N.D. Ill. Nov. 12, 2019) (remanding where ALJ failed to conduct "a proper assessment" of therapist's opinions on disability, "instead improperly dismissing them outright based on [her] status as a therapist, not a psychiatrist"); *Esquibel v. Berryhill*, No. 1:18-CV-159, 2019 WL 1594339, at *4-5 (N.D. Ind. Apr. 15, 2019) (information from medical sources who are not "acceptable medical sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function" (quoting SSR 06-03p)); *Diaz v. Berryhill*, No. 16 C 11419, 2017 WL 4163959, at *2 (N.D. Ill. Sept. 20, 2017) (ALJ was still required to evaluate the opinion of claimant's therapist "applying substantially the same factors as those set forth in the 'treating physician rule,'" even though he was not an "acceptable medical source").

inconsistent with the evidence. In turn, to the extent the ALJ accords any of those opinions greater weight, they must be taken into account when reconsidering the sit/stand option included in Plaintiff's RFC as directed above.

### III. The ALJ's Assessment of the Medical Evidence

Plaintiff further challenges the ALJ's assessment of the medical evidence in two additional respects. She first disputes the ALJ's assertion that the treatments for her knee and back symptoms were "generally successful in some controlling [of] those symptoms." (Pl.'s Br. 11-12, ECF No. 16-17; AR 33). And second, Plaintiff challenges the ALJ's independent characterization of an April 2017 MRI insofar as it omitted any mention of her "moderate right foraminal stenosis at L3-L4," without subjecting that imaging to medical scrutiny. (Pl.'s Br 12-13, ECF No. 16). The Court agrees with parts of these arguments, yet rejects other parts, as discussed more fully below.

Regarding the first argument, the Commissioner fairly defends the ALJ's finding that Plaintiff's treatments were "generally successful" in addressing her symptoms to at least some degree. (D's Mem. 7, 9, ECF No. 22 (citing AR 32-33, 674, 677, 683)). Even Plaintiff acknowledges records discussed by the ALJ "reflecting increased left knee strength and reduced pain" after her February 2016 knee surgery and related physical therapy, and sporadic improvements in her back pain following steroid injections and medications. (Pl.'s Br. 2, 11-12, ECF No. 16 (citing AR 543-44, 605-08, 674-77, 749); *see also* AR 31 (citing AR 898-99)). Given such evidence, the ALJ's limited finding that Plaintiff's treatments (knee surgery, physical therapy, spinal injections, and pain medications) were "generally successful" in providing at least "some controlling" of her symptoms (AR 33) had sufficient support and therefore caused no error. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) ("Substantial evidence is not a demanding requirement," and is satisfied by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion"). It bears mentioning, however, that any such improvement is not dispositive. "The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). And here, the record indicates that Plaintiff also experienced knee swelling and pain (up to 8 on a scale of 1 to 10) despite earlier improvement provided by her knee surgery and physical therapy (AR 880), and also experienced ongoing back pain (up to 9 on a scale of 1 to 10) despite prior improvement provided by spinal injections and pain medications. (AR 605-09, 670-73, 683-86). As discussed above, the ALJ was required to consider this evidence also, and is directed to do so on remand.

Plaintiff's April 2017 MRI may warrant further consideration as well. As Plaintiff argues (and the Commissioner does not dispute), this imaging detected not merely the "mild foraminal stenosis" noted by the ALJ (AR 31), but rather "mild *central and left* foraminal stenosis" and "*moderate right* foraminal stenosis." (AR 1059 (emphasis added)). To the extent the ALJ relies on this imaging to accept or discount Plaintiff's claimed limitations, she must certainly consider the moderate finding along with the mild. Contrary to Plaintiff's argument, however, whether the ALJ should subject the MRI to medical scrutiny also depends on its significance to the ALJ's decision. "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citing *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018)). But while the ALJ's decision here cited Plaintiff's April 2017 MRI (among others), it suggests no particular reliance on that MRI to support the ALJ's conclusions about Plaintiff's impairments. To the extent the ALJ does so on remand, a medical opinion interpreting the significance of the MRI may be required. But that too is for the ALJ to determine.

## IV.    Plaintiff's Subjective Limitations

Plaintiff's remaining challenge attacks the ALJ's assessment of her subjective complaints in several respects. She again argues the ALJ improperly relied on her daily activities to discount her claimed limitations without considering the difficulty she has performing them or the assistance she receives from her fiancé and grandchildren while doing so. (Pl.'s Br. 16-17, ECF No. 16). As discussed above, the ALJ was obliged to take these factors into account and should do so on remand. (*See* Part I, A *supra*). *See also Brown v. Colvin*, 845 F.3d 247, 253-54 (7th Cir. 2016) (cautioning against equating limited daily activities with full-time work where claimant performed "light housework" with "significant help" from nephews). The same is true of the ALJ's reliance on Plaintiff's care for her young grandchildren (AR 33), particularly in view of Plaintiff's explanation that they are old enough to follow her directions while she remains seated or reclined, that she can rest while they are in school, and that she receives help with them from her fiancé. (Pl.'s Br. 16, ECF No. 16). *See also Brown*, 845 F.3d at 253-54 ("Although Brown cared for her young daughter throughout the day, she often sat or laid down while doing so and at times received childcare assistance from her mother and a friend.").

Plaintiff next disputes the ALJ's assertion that she "has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 33). Plaintiff fairly argues this statement is vague in its failure to identify any alternative treatment more indicative of disability, and that it overlooks her invasive knee surgery and recommendations for a full knee replacement. (Pl.'s Br. 17, ECF No. 16 (citing AR 517, 558, 679)). The record also indicates that Plaintiff's knee surgery and spinal injections were both required because more conservative measures had failed (AR 517-18, 551-52, 721, 730, 745, 764, 885, 892), and yet those treatments also failed to relieve her knee and back pain. (AR 543, 605-08, 670-73, 677, 683-86, 880). The

ALJ should consider this evidence on remand and clearly explain any conclusion that Plaintiff's various procedures and treatments are inconsistent with her claimed limitations. *See Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018) (ALJ erred in finding conservative treatment was sufficient to address claimant's back pain where treatment records stated it was "unresponsive to conservative treatment"); *Akin*, 887 F.3d at 318 (ALJ "improperly discredited" claimant "because of her conservative course of treatment" without considering "explanations for not seeking more aggressive treatment").

That said, Plaintiff's claim that the ALJ erroneously assessed her pain medication use is unconvincing. Contrary to Plaintiff's suggestion, the ALJ's assertion that Plaintiff takes Percocet (Endocet) "sparingly, not daily" (AR 33) is well supported by several treatment records noting precisely that (AR 928, 1048, 1192), and by several others demonstrating that her last dose of the medication was days earlier and/or she had no need to refill her prescription for it. (AR 914, 962, 987, 991, 1094, 1174, 1194). And while Plaintiff is correct that that an ALJ must consider medication side effects when assessing a claimant's need for pain relief, the record here demonstrates that Plaintiff repeatedly denied experiencing any negative side effects from Percocet (Endocet) and many other medications she was taking for pain. (AR 570, 583, 605, 683, 900, 911, 944, 952, 1192). *See also McHenry*, 911 F.3d at 872-73 (rejecting argument that ALJ failed to consider medication side-effects where treatment notes showed claimant repeatedly denied such adverse effects); *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (rejecting argument that ALJ failed to consider medication side-effects that "had little support in the record").

Lastly, Plaintiff argues the ALJ "employed an improper legal standard" when evaluating Plaintiff's claimed symptoms and limitations "by stating 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence.'" (Pl.'s Br. 19, ECF No. 16 (quoting (AR 30)). According to Plaintiff, the ALJ thereby "elevated the burden well above the preponderance standard" applicable to Plaintiff's claim by "requiring the claimant's reports of symptoms to match the other evidence exactly, *i.e.*, to be 'entirely consistent.'" (*Id.* at 20). The Commissioner responds that "Plaintiff reads far too much into the ALJ's statement, which, the Commissioner submits, was simply a tactful way of saying that Plaintiff's allegations are not supported by the record." (D's Mem. 9 n.7, ECF No. 22). As the case is being remanded on other grounds, it is unnecessary to address this argument in detail. It suffices to say that the Seventh Circuit has criticized such statements as "meaningless" boilerplate, subject to remand where an ALJ otherwise fails to "give sufficient reasons, grounded in evidence in the record, to support her ultimate determination." *Murphy*, 759 F.3d at 816. Critical on remand, therefore, is that the ALJ reassess Plaintiff's claimed symptoms and limitations in keeping with the applicable standard and in light of the full record, particularly the evidence discussed herein, and then "give sufficient reasons, grounded in evidence in the record, to support her ultimate determination." *Id.*; *see also Akin*, 887 F.3d at 318 (requiring in response to claimant's argument that ALJ improperly applied a "not entirely credible" standard when assessing her subjective symptoms and limitations that the ALJ develop fuller record-based reasons for accepting or discounting those claims).

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 31st day of March, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT